INHABITANTS of LYMAN *vs.* INHABITANTS of KENNEBUNKPORT.

York.　　Opinion March 17, 1891.

*Pauper. Overseers of the Poor. Selectmen. R. S., c. 3, § 12; c. 24, § 10; Stats. March 19, and 21, 1821, § 1.*

Towns have the discretionary power to choose any number of overseers of the poor not exceeding twelve; but if they deem the election of separate overseers unnecessary, the duties pertaining to those officers are to be discharged by the selectmen, of whom there must be three, five or seven. *Held,* accordingly, that the election of only one overseer of the poor is valid.

ON MOTION AND EXCEPTIONS.

In the case, which was a pauper suit between the towns, it appeared that the plaintiffs had elected but one overseer of the poor, who was in office at the time the supplies were furnished. The defendants contended that one overseer was not sufficient, as the law requires the election of three, five or seven; and, therefore objected to the notice of the supplies given to them, which was signed by only one overseer. The presiding justice instructed the jury that it was regular and sufficient in form. The defendants excepted to the instruction.

*R. P. Tapley, N. B. Walker,* with him, for defendants.

The statute has provided for a board of overseers, consisting of three, five or seven persons. It is the judgment of the board which adjudicates questions of pauper supplies. No burden is cast upon defendants if plaintiffs neglect to elect such board, and pursue a course not warranted by statute. Plaintiffs can not dispense with statute so far as defendants are concerned. Defendants have the right to insist upon full performance of all statute requirements. *Boothby* v. *Troy,* 48 Maine, 560; *Williamsburg* v. *Lord,* 51 *Id.* 599. It is only a board of at least three officers, elected and sworn as overseers, that could lay the foundation of the claim in this case. Notice a nullity. *Dover* v. *Deer Isle,* 15 Maine, 169. One overseer could not perform the duties described in R. S., c. 24, § § 12, 15; bind out apprentices or servants under § § 21, 22; bring suit as in

§ 23 ; bind to service as in § 27 ; complain as in § § 42, 44 ; take charge of property as in § 46 ; grant licenses as in c. 124, § 9 ; give consent as in c. 71, § 11. These contemplate the board required to be elected at the annual meeting. C. 24, § 10, allowing overseers not exceeding twelve in number does not repeal c. 3, § 12, or otherwise modify it, as to numbers, except to allow an increase in the number to twelve if they choose. The two provisions must be construed together. There must be, at least, three in number, and there may be as many as twelve.

*B. F. Hamilton and G. F. Haley*, for plaintiffs.

WHITEHOUSE, J. Action to recover for the support of a pauper whose legal settlement is alleged to have been in the defendant town.

The written notice to the overseers of the defendant town was signed by "James B. Roberts, overseer of the poor of Lyman." It appeared from the town records in evidence that pursuant to articles in the warrant therefor, three inhabitants of the town other than Roberts were chosen selectmen and assessors and James B. Roberts overseer of the poor for the municipal year in question. No other overseers were chosen. Thereupon it is contended in behalf of the defense that, inasmuch as the liability of one town to reimburse another for expenses thus incurred in support of a pauper is created solely by the express terms of legislative enactment, the plaintiff town must strictly observe all these statutory requirements to authorize a recovery ; that by section 12 of chapter 3 of the Revised Statutes, towns shall choose three, five or seven inhabitants to be selectmen and overseers of the poor ; that the election of one overseer is not a compliance with this statute ; and that when the varied and responsible duties imposed upon these officers by law are in fact performed by a single inhabitant chosen to that office, it will not be sufficient to charge another town with the expense of the support of a pauper having a settlement therein.

If the premises are correct the conclusion will be difficult to resist.

But it is provided by section 10 of chapter 24, R. S., that towns may at their annual meeting choose not exceeding twelve legal voters therein to be overseers of the poor, and section 12 of chapter 3, above referred to, provides for the election of three, five or seven selectmen and overseers of the poor *when other overseers are not chosen*. Are these two enactments to be construed together so that the requirement in chapter 3 to choose three, five, or seven, must be held at the same time to be a special designation of the number of overseers of the poor to be chosen under chapter 24? Clearly not. This more plainly appears from an examination of the original enactments of 1821 in this state, which were but slight modifications of the corresponding statutes in Massachusetts of 1786 and 1794.

It is provided in section 1 of the Act approved March 19, 1821, that in the month of March or April annually "the citizens in any town shall choose . . . three, five, or seven able and discreet persons of good conversation inhabiting in the town to be selectmen and overseers of the poor where other persons shall not be particularly chosen to that office, (which any town may do if they shall think it necessary and convenient)." And by section 3 of Act approved March 21, 1821, it is provided that "any town may also at their annual meeting choose any number not exceeding twelve suitable persons dwelling therein to be overseers of the poor; and where such are not specially chosen the selectmen shall be overseers of the poor." It is manifest that when the town exercised the power conferred by the latter section and chose any number not exceeding twelve overseers of the poor, the direction in the former section to choose three, five, or seven inhabitants to be selectmen, applied only to selectmen and not to overseers of the poor; for the express condition was fulfilled, and "other persons were particularly chosen to that office."

The language employed in both sections leaves no doubt that with respect to the number of officers they were to be construed separately; "where such (overseers) are not specially chosen the selectmen shall be overseers of the poor." The limitation as to numbers referred primarily to selectmen who should, however, be *ex-officio* overseers of the poor in case the privilege

of choosing any number of separate overseers had not been exercised. Any attempt to construe the enactments together and apply the limitations, in regard to numbers, to the choice of overseers in both sections at the same time, would render their provisions incongruous and absurd and the acts mutually destructive. The privilege of choosing "any number" not exceeding twelve is destroyed by restricting the choice to three, five, or seven. Nor are we required to impute any such contradictory purpose to the legislature. Construed according to their plain terms and express conditions, the two enactments were obviously designed to give towns discretionary power to choose any number of overseers not exceeding twelve; but if they deemed the election of separate overseers unnecessary the duties pertaining to those officers were to be discharged by the selectmen of whom there must be three, five, or seven. These separate enactments have been preserved through all the revisions of our statutes and in their present condensed form have precisely the same import. The right to choose not exceeding twelve, is the right to choose any number not exceeding twelve. When the functions of selectmen and overseers are combined in the same persons, there must be three, five, or seven; if a separate board of overseers is constituted, there may be any number not exceeding twelve.

The election of James B. Roberts as sole overseer of the poor of Lyman was in compliance with the statutes. His official action as such is binding on the defendant town. The notice signed by him was sufficient to charge the defendant town with liability for the support of the pauper if he had a legal settlement therein. That question was submitted to the jury under instructions to which no exceptions were taken. There was evidence sufficient to authorize the verdict of the jury, and the case discloses no just cause for reversing their finding upon that issue.

But excessive interest was evidently allowed. If the plaintiff shall within thirty days from the entry of this decision remit four dollars and eighty-eight cents and accept judgment for

seventy-three dollars aud forty-eight cents as of September 24, 1889, the entry must be,

*Motion and exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.